BRIGHT, Circuit Judge,
dissenting.
I respectfully dissent. I would hold that the Kornetskyis have demonstrated past persecution, and that the government has failed to rebut the resulting presumption *259 that the Kornetskyis have a well-founded fear of future persecution.
The immigration judge (“IJ”) found Dr. Kornetskyi’s testimony credible, J.A. at 14, but concluded that the facts Dr. Kornetskyi related did not amount to persecution and that, if they did, the persecution was not for a political reason, Id. at 14-16.
Dr. Kornetskyi testified that over a course of years, state agents persistently followed, accosted, and threatened him because he defied the state by openly criticizing the government. He testified that state agents repeatedly — on at least six occasions — intruded into his home to conduct violent and destructive “searches” the professed purpose of which was only to threaten them for Dr. Kornetskyi’s criticism of the government. Id. at 242. He testified that state agents repeatedly threatened to kill him and his wife, or to seal them up in an insane asylum. Id. at 241^2. He testified that the state agents terrified him, his wife, and his children. In addition, he testified that he and his wife suffered economic reprisals.[2]
Persecution does not require physical harm to a person’s body. Cf. Singh v. Ashcroft, 398 F.3d 396, 404 (6th Cir.2005). The state’s sustained, years-long program of surveillance, interrogation, death threats and physically violent intrusions into their home, in addition to economic reprisals — constitute more than harassment or intimidation. It was persecution.[3]
This persecution was political in nature. The state acted against Dr. Kornetskyi because he dared to criticize the government in defiance of government orders to be silent — a fundamentally political act.[4] See, e.g., Hasan v. Ashcroft, 380 F.3d 1114, 1120 (9th Cir.2004).
Finally, the government did not rebut the presumption that should arise, that the Kornetskyis have a well-founded fear of future persecution. The emergence of Ukraine as a formally independent state *260 does not establish that the officials remaining in place will be more tolerant of criticism of the government than they were while under the domination of the now-defunct Soviet Union. Dr. Kornetskyi testified that many of the same local officials remained in place, and that they continued to suppress criticism of the government. The government offered no evidence to rebut, or to nullify, this specific testimony.
I would reverse the IJ’s decision that the Kornetskyis are ineligible for asylum.

. The IJ misstated the record on two important points: First, she wrote that the only evidence that state agents ever ''searched” the Kornetskyis' house came from an affidavit obtained from Mrs. Kornetskyi's aunt. J.A. at 13. This is clearly erroneous. Dr. Kornetskyi testified to these searches in at least two parts of the statement he submitted with his asylum application. The IJ’s misstatement on so fundamental a point must greatly undermine confidence in the IJ’s grasp of the facts of the case — and renders more troubling the IJ’s confusion of Ukraine with Yugoslavia, see slip op., supra, at 6, n. 1. Second, the IJ wrote that the asserted persecution occurred entirely before Ukrainian independence, and because of the Soviet KGB. J.A. at 16. Dr. Kornetskyi testified, however, that he was visited three times by state agents after independence, and that they questioned and threatened him then. J.A. at 248. Dr. Kornetskyi testified also that the actual people in the government who had persecuted him were the same after independence and that their intolerance of criticism and dissent was unchanged, at least as to him. J.A. at 204, 248-49.

. The IJ erred by minimizing Dr. Kornetskyi’s allegations, stating that "[T]he respondent’s claims seem to consist of his demotion from the head of a department in a regional hospital to that of a family practitioner.” J.A. at 15.

. The IJ again misstated the record on another important point, asserting that Dr. Kornetskyi "has failed to articulate a statutory basis upon which this Court could find persecution, if it were so inclined.” J.A. at 15. This statement was apparently based on Dr. Kornetskyi having left blank the boxes in question four of his asylum application, specifying types of causes for persecution. See J.A. at 13. In response to question four, Dr. Kornetskyi instead referred to his lengthy affidavit in support of his asylum request. Additionally, Dr. Kornetskyi’s answer to question two clearly indicated that he was asserting political persecution. He wrote, "The government ... regard[s] me and my wife as threats to them and their ability to control the people.” J.A. at 204.